IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                          |   |                              |
|--------------------------|---|------------------------------|
| WAYNE BRYAN              | : |                              |
|                          | : |                              |
| v.                       | : | Civil Action No. DKC 10-2452 |
|                          | : |                              |
| PRINCE GEORGE'S COUNTY,  | : |                              |
| MARYLAND                 | : |                              |

**MEMORANDUM OPINION**

Plaintiff Wayne Bryan formerly worked as a corrections officer with the Prince George's County Department of Corrections ("DOC"). After Bryan was arrested and convicted of a crime in Virginia, the DOC fired him for conduct unbecoming an officer. In this action, Bryan alleges that the DOC dismissed him because of discriminatory and retaliatory animus. Presently pending is a motion to dismiss or, in the alternative, for summary judgment (ECF No. 5) filed by Defendant Prince George's County. The issues are fully briefed and the court now rules, no hearing being deemed necessary. *See* Local Rule 105.6. For the reasons that follow, the County's motion will be granted.

**I.    Background**

**A.    Factual Background**

The following facts are uncontroverted.

Bryan, who is black and Jamaican, worked as a DOC corrections officer from late 2002 until April 6, 2009. His first several years of employment were evidently rather

uneventful. He received generally satisfactory reviews and was disciplined only once in his first five years of work. In the one instance of discipline, the DOC issued Bryan a letter of reprimand.

**1. Bryan's Arrests and Conviction**

Things changed in mid-2008, when Bryan was arrested twice. First, on May 6, 2008, Bryan was arrested in Fairfax County, Virginia. Virginia authorities charged him with assault and battery on a family member, after a police officer spotted Bryan grabbing his wife by the neck and dragging her to his car. Second, on May 7, 2008, Bryan's wife filed charges in the District Court of Maryland for Prince George's County, alleging that Bryan had sexually abused her two days before. Bryan surrendered to Prince George's County Police on May 9 and was charged with a first-degree sex offense.

One of Bryan's arrests eventually led to a conviction. In the Maryland action, Bryan's wife recanted her testimony and withdrew her complaint; the charges were entered *nolle prosequi*. The Virginia action, however, moved forward. Bryan pled not guilty to the Virginia charge, but on July 31, 2008, the General District Court of Fairfax County found Bryan guilty as charged. Among other things, the court sentenced him to one year of probation before judgment. After he successfully completed his

probation and an anger management course, the Virginia court dismissed the charge roughly a year later.

## B.    Bryan's Suspension and Termination

Bryan's arrests spurred the DOC to take disciplinary action against him.    After the Virginia arrest, Bryan was ordered to report to the Office of Professional Responsibility and Legal Affairs ("OPRLA").    On May 9, 2008, that office suspended Bryan without pay pending completion of the criminal investigation. When Bryan was convicted in Virginia, the OPRLA sought and received approval to launch an internal investigation against Bryan.    As part of that investigation, Bryan gave a statement in which he admitted to the two arrests and one conviction.

After several months of investigation, the chief of the OPRLA informed Bryan that the office intended to take disciplinary action against him.    The letter notified Bryan that he had been formally charged with "conduct unbecoming an officer" because of his arrest and conviction in Virginia.    The letter also indicated that the OPRLA would recommend disciplinary action.

After receiving the letter, Bryan requested a hearing before the Administrative Hearing Board ("AHB"), a three-member panel composed of DOC employees.    He appeared before the Board on March 6, 2009.    Both the DOC and Bryan, who was represented

by counsel, offered testimony and other evidence in the adversary proceeding.

In the end, the Board agreed that Bryan had engaged in conduct unbecoming an officer. By a two-to-one vote, the AHB recommended that Bryan be dismissed. In a letter dated April 6, 2009, Interim DOC Director Mary Lou McDonough agreed with the recommendation of the AHB and formally terminated Bryan.

### C. Procedural Background

Bryan appealed his termination to the Circuit Court for Prince George's County. On February 17, 2011, the court affirmed the decision of the DOC.

Bryan also filed a charge of discrimination with the Prince George's County Human Relations Commission and the Equal Employment Opportunity Commission ("EEOC") on October 8, 2008. (Def.'s Ex. 1.23, at 449). In that charge, he complained:

> I believe I have been discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, with regard to suspension (Administrative Leave without Pay) based on my national origin (Jamaican) and retaliation.

(*Id.*). After receiving Bryan's charge, the EEOC requested certain information from the DOC. The DOC responded five months later and denied all allegations of discrimination. It did "acknowledge," however, "that Mr. Bryan was terminated from employment as a Correctional Officer on or about April 6, 2009."

(Def.'s Ex. 1.25, at 465).   The EEOC subsequently issued Bryan a right to sue letter on June 21, 2010.

On September 7, 2010, Bryan filed a complaint against Defendant Prince George's County, Maryland in this court.  (ECF No. 1).  The complaint contains only one count titled "Title VII [of the Civil Rights Act of 1964]," but also references the Maryland Fair Employment Practices Act and the Prince George's County Code.  (*Id.* ¶ 3).   Bryan generally alleges that the County suspended and fired him because of his race and national origin or, alternatively, in retaliation for filing an EEOC charge.

On January 27, 2011, the County filed the instant motion to dismiss or, in the alternative, for summary judgment.  (ECF No. 5).  Bryan responded in opposition on February 23.  (ECF Nos. 8-9).  The County replied on March 14, 2011.  (ECF No. 10).

**II.  Standard of Review**

The County has moved to dismiss or, alternatively, for summary judgment.

Because both parties rely extensively on matters outside the pleadings, the court will treat the motion as a motion for summary judgment.  *See Walker v. True*, 399 F.3d 315, 319 n.2 (4th Cir. 2005); *Offen v. Brenner*, 553 F.Supp.2d 565, 568 (D.Md. 2008).  A court may enter summary judgment only if there is no genuine issue as to any material fact and the moving party is

5

entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50. (citations omitted). At the same time, the court must construe the facts that are presented in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett,* 532 F.3d at 297.

## III. Analysis

### A. Title VII

Bryan's claims under Title VII come in two forms – discrimination and retaliation – and concern two principal events – his suspension and his termination. His discrimination claim, in turn, concerns two types of protected classes: race and national origin. Some of these claims have not been properly exhausted in the administrative process; those claims must be dismissed. As for the remainder, they fail on their merits.

#### 1. Administrative Exhaustion: Race-Based Discrimination and Suspension-Related Claims

The County contends that Bryan has failed to exhaust his administrative remedies as to several of his allegations. Because the failure to exhaust administrative remedies deprives a federal court of jurisdiction, *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 330-01 & n.2 (4th Cir. 2009), the court must start its analysis there. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-95 (1998).

"Before filing suit under Title VII, a plaintiff must exhaust h[is] administrative remedies by bringing a charge with the EEOC." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000); *accord Lewis v. City of Chicago*, 130 S.Ct. 2191, 2196-97 (2010). The scope of the initial administrative charge places some limits on the scope of a subsequent Title VII civil

action. In particular, the scope of the civil action is confined to "those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation [of that complaint]." *Jones*, 551 F.3d at 300 (quotation marks omitted).

Title VII civil suits may not present entirely new factual bases or entirely new theories of liability not found in the initial EEOC complaint. Thus, "a claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex." *Id.* at 300. Moreover, a plaintiff fails to exhaust his claims when "his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." *Chacko v. Patuxent Instit.*, 429 F.3d 505, 506 (4th Cir. 2005).

As Bryan now concedes (ECF No. 9, at 8-9), he did not exhaust his race-based discrimination claims. He did not check the "race" box on his charge form, and the narrative he wrote on the form made no mention of his race. Nor would it be reasonable to expect an investigation of his national origin claim to uncover evidence concerning his separate, race-based claims. Because Bryan relied only on his Jamaican origin in his EEOC charge, his claims premised on race-based discrimination

must be dismissed. *Miles v. Dell, Inc.*, 429 F.3d 480, 492 (4th Cir. 2005).

The County also contends, however, that Bryan failed to exhaust any claims concerning his termination. It places heavy emphasis on the fact that Bryan's EEOC charge does not reference any facts related to the termination. Indeed, Bryan filed his charge *before* his termination; the charge consequently speaks only to the suspension without pay. For his part, Bryan suggests his original charge must be liberally construed to "relate" to his subsequent termination.

The administrative exhaustion doctrine does not bar the claims concerning termination. In this instance, the Fourth Circuit's instruction that claims "developed by reasonable investigation" are exhausted is decisive. *Jones*, 551 F.3d at 300. The DOC responded to the EEOC by specifically addressing Bryan's termination, indicating that it was aware that Bryan's complaint implicated his termination. Moreover, the termination was merely the culmination of a process that began with Bryan's suspension, and the suspension and termination rest on the same set of facts. Consequently, the core contention is the same for both events. *See, e.g.*, *Benard v. Washington Cnty.*, 465 F.Supp.2d 461, 472 (W.D.Pa. 2006). In short, all parties in this case were fully aware that a claim related to Bryan's termination could "reasonably be expected to follow" from the

administrative investigation of his charge. *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). Because Bryan exhausted his claims concerning his termination, it is appropriate to consider those claims on their merits.

### 2. National-Origin-Based Discrimination

Bryan first alleges that the DOC suspended and terminated him because of discriminatory animus, rather than because of his arrests and subsequent conviction. To survive summary judgment on this claim, Bryan must produce either direct evidence of discrimination or make use of the test outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Because he does not possess direct evidence, Bryan's opposition employs the *McDonnell Douglas* approach.

Proving discrimination under the familiar *McDonnell Douglas* framework involves three steps. First, Bryan must establish a prima facie case of discrimination. To do so, he must show that (1) he is a member of a protected class, (2) the misconduct he engaged in was comparable in seriousness to misconduct of employees outside his protected class, and (3) the disciplinary measures enforced against him were more severe than those enforced against those other employees. *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993). Second, if Bryan establishes a prima facie case, the burden shifts to the County to provide a non-discriminatory reason for the difference in

discipline. *Id.* Third, after the County provides its reasons, the burden shifts once more to Bryan to demonstrate that those reasons are pretextual. *Id.*

Both parties concede that Bryan has established the first element of the prima facie case, in that he is a member of a protected class. But the County contends that Bryan has not established the second or third elements, as he has not identified any similarly situated employee who was punished differently than he was. In response, Bryan points to two U.S.-born comparators: corrections officers Mark Bradley and Kenneth Bruce. Both officers were accused of assault on their spouses.[1]

Bryan does not attempt to use his purported comparators to establish that his suspension amounted to disparate discipline. Instead, Bryan focuses only on the fact he was terminated, while his comparators were not. (*See, e.g.*, ECF No. 9, at 15 ("Bryan was terminated, whereas Bradley was only suspended."); *id.* at 16 ("Bruce was not terminated from his position."); *see also* ECF

---

[1] Bradley was criminally charged; Bruce had a civil protective order filed against him. In addition, Bryan maintains that Bruce was arrested for driving while intoxicated and he was "not terminated." (ECF No. 9-1, Bryan Aff. ¶ 20). Except for the criminal docket, there is no other admissible evidence in the record concerning Bruce's arrest for drunk driving – in particular, there is no evidence concerning any disciplinary process that followed Bruce's arrest. Regardless, the driving while intoxicated conviction is not similar enough to Bryan's misconduct to provide a useful comparison.

No. 9-1, Bryan Aff. ¶ 20). Because he has not presented any comparators who engaged in similar misconduct who were not suspended, he has not established a prima facie case as to his suspension.

Nor do Bryan's ostensible comparators establish that Bryan was treated more severely when he was terminated than others outside his protected class. "The similarity between comparators . . . must be clearly established in order to be meaningful." *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008). In particular, "[t]he compared employees must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Odom v. Int'l Paper Co.*, 652 F.Supp.2d 671, 688 (E.D.Va. 2009) (quotation marks omitted). Bradley and Bruce, the proposed comparators in this case, are not similarly situated and do not prove disparate treatment for two reasons.

First, Bradley and Bruce were not similarly situated because their punishments involved decision-makers different from those involved in Bryan's termination. *See Forrest v. Transit Mgmt. of Charlotte, Inc.*, 245 F.App'x 255, 257 (4th Cir. 2007) (explaining in disparate discipline case that, where "different decision-makers are involved, employees are generally

not similarly situated."); *Popo v. Giant Foods LLC*, 675 F.Supp.2d 583, 589 (D.Md. 2009) (same). Bradley received a ten-day suspension from former DOC director Barry Stanton. (Def.'s Ex. 1.27, at 475). Likewise, Bruce evidently received discipline from Stanton. (*Id.* at 526). Bryan, on the other hand, was terminated by McDonough (in consultation with the AHB). Given the significant discretion afforded to the DOC director in making disciplinary decisions, *see* Prince George's Cnty. Code § 16-195(a), it is certainly possible that two directors might impose different types of punishment, without one or the other being motivated by discriminatory animus. *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1233 (10th Cir. 2000) ("Different supervisors will inevitably react differently to employee [misconduct].").

Second, Bryan has not established that Bradley and Bruce's misconduct was as egregious as his own, at least when taking account of all relevant mitigating circumstances. In particular, both Bradley and Bruce pled guilty to their alleged misconduct and acknowledged fault. Bryan, on the other hand, challenged the allegations at every level; indeed, he continues to insist that he did not engage in any form of "conduct unbecoming." (ECF No. 9-1, Bryan Aff. ¶ 21 ("I disagree that my conduct brought disrepute on the County and the Department of Corrections as alleged by the defendant.")). The County

presents evidence that corrections officers who accept responsibility receive lesser punishments. Although Bryan dubs such an idea "conclusory, unreliable, and speculative" (ECF No. 9, at 7), it is not a novel idea that an individual who acknowledges his misconduct may receive leniency. *See, e.g.*, *Spath v. Hayes Wheels Int'l-Indiana, Inc.*, 211 F.3d 392, 397 (7th Cir. 2000) (finding employees were not similarly situated, where one employee acknowledged misconduct and other did not). The criminal justice system, for instance, regularly accounts for the acceptance of responsibility in meting out punishments. *See, e.g.*, *United States v. Jeffery*, 631 F.3d 669, 678 (4th Cir. 2011).

Because Bryan attempts to build his prima facie case on comparators who are not truly comparators, his national origin-based discrimination under Title VII claim fails at the first step.

If the court were to focus solely on the alleged misconduct of the others, without reference to different decision makers or the mitigating circumstances for purposes of the prima facie case, it might be said that Bryan had made a prima facie showing. Then, though, the court examines the County's legitimate, non-discriminatory reason for treating Bryan's situation differently than those of the comparators: his criminal arrest and conviction in Virginia (which violated DOC

14

policy), followed by his unwillingness to accept responsibility in the DOC disciplinary process. Bryan insists that the reason must be pretextual because Bradley and Bruce were treated differently, but such an approach confuses the prima facie case with the pretext step. Once the County provides a nondiscriminatory reason for differences in disciplinary enforcement, here, their willingness to accept responsibility, Bryan must show that it was not the true reason for the different treatment, but rather a pretext for discrimination. Bryan cannot make that showing by simply listing the criteria involved in a disciplinary decision and insisting it was not met. A litigant cannot simply dub an employer's explanation false without supporting evidence. Instead, he must point to facts that render the employer's reason so questionable as to raise an inference of deceit. It is not the court's role to second-guess the DOC's analysis or assess whether its decision "was wise, fair, or even correct." *Dugan v. Albermarle Cnty. Sch. Bd.*, 293 F.3d 716, 722 (4th Cir. 2002) (quotation marks omitted). Rather, the court's only responsibility is to determine whether Bryan has met his burden of demonstrating that the DOC's explanation "is unworthy of credence to the extent that it will permit the trier of fact to infer the ultimate fact of intentional discrimination." *Id*. at 723. Bryan has not met that burden.

Summary judgment will be entered for the County on Bryan's Title VII national-origin-based discrimination claim.

### 3. Retaliation

In the second portion of his claim under Title VII, Bryan alleges that the DOC retaliated against him for engaging in protected activity. The County contends that Bryan has not established any causal connection between the filing of his EEOC complaint and his suspension and termination. Even if he had, he also has presented no evidence of pretext. Notably, Bryan offers no response – or any real reference to his retaliation claim at all – in his opposition.

Just like his discrimination claim, Bryan lacks direct evidence and therefore must employ the *McDonnell Douglas* framework. *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004). To survive summary judgment under *McDonnell Douglas*, he would need to demonstrate three elements: (1) he engaged in protected activity; (2) the agency took an adverse employment action against him; and (3) there was a causal connection between the protected activity and the adverse employment action. *See Davis v. Dimensions Health Corp.*, 639 F.Supp.2d 610, 616 (D.Md. 2009); *accord Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007). Once that challenge is met, the County must provide a non-discriminatory explanation for the adverse action. The

burden would then shift back to Bryan to show the reason is pretextual.

The only identifiable protected activity in this case is the EEOC complaint Bryan filed in October 2008. That complaint could not have had anything to do with Bryan's suspension, which was imposed months earlier in May 2008. "[T]he employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case" because "by definition, an employer cannot take action because of a factor of which it is unaware." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998). An employer cannot be aware, of course, of something that has not yet occurred. It follows that, "as a matter of logic and as of law," the suspension was not imposed in retaliation for Bryan's protected activity. *Murdock v. Northrop Grumman PRB Sys.*, 162 F.Supp.2d 431, 432 (D.Md. 2001); *accord Morral v. Gates*, 370 F.App'x 396, 398 n.2 (4th Cir. 2010). Even if the suspension continued past the filing of the complaint, that fact standing alone would not establish causation. *See Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 651 (4th Cir. 2002).

Bryan also has not connected the filing of his complaint to his termination almost six months later. He cannot rely on mere temporal proximity, as six months is too long to assume a

connection based on time alone. To establish causation through temporal proximity alone, "the temporal proximity must be very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). A period of sixth months is not "very close." *See Elries v. Denny's Inc.*, 179 F.Supp.2d 590, 599 (D.Md. 2002) (listing cases). Although other relevant evidence may be used to support a causal connection where temporal proximity is lacking, *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007), Bryan has not summoned any such evidence here.[2]

In any event, even putting aside these substantial problems with Bryan's prima facie case, the lack of any evidence of pretext would prove fatal to Bryan's retaliation claim. The County has provided legitimate reasons for the actions it took. As explained above, Bryan as not offered any basis to doubt those reasons.

Summary judgment will be entered for the County on Bryan's Title VII retaliation claim.

### B. State Law Claims

Bryan also brings claims under Md. Code Ann., State Gov't § 20-1202 and Prince George's County Code § 2-222. In challenging these claims, the County focuses substantial

---

[2]    In addition, Bryan did not even attempt to make the basic showing that *any* of the relevant decisionmakers were aware of his EEOC complaint at the time of his termination.

attention on the complaint's legal citations. It also suggests that many of these state law claims are time-barred.

As an initial matter, the County errs in arguing that Bryan's claims should be dismissed because his complaint includes inadequate statutory citations. To be sure, the references to state law in the complaint are inelegant. The complaint cites Article 49B of the Maryland Code, but the relevant statute was recodified without substantive revision into Title 20 of the State Government Articles of the Maryland Code. *See Washington Suburban Sanitary Comm'n v. Phillips*, 413 Md. 606, 610 n.2 (2010). The complaint also cites the Prince George's County Code, but it does not specify a particular provision. Even so, these problems do not justify dismissal. "[T]he failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim. Factual allegations alone are what matters." *Jones v. Koons Auto., Inc.*, 752 F.Supp.2d 670, 683 (D.Md. 2010); *accord Coos Cnty. Bd. of Cnty. Comm'rs v. Kempthorne,* 531 F.3d 792, 812 (9th Cir. 2008); *Consol. Edison Co. of New York, Inc. v. UGI Utils., Inc.*, 423 F.3d 90, 104 (2d Cir. 2005); *Shah v. Inter-Cont'l Hotel Chicago Operating Corp.*, 314 F.3d 278, 282 (7th Cir. 2002); *C&F Packing Co., Inc. v. IBP, Inc.*, 224 F.3d 1296, 1306 (Fed. Cir. 2000); *see also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) (noting that legal conclusions only help in building the

"framework of a complaint"). The import of Bryan's claims was clear, as evidenced by the County's ability to identify and respond to the state law claims.

Although Bryan's state law claims survive the County's pleading argument, they still fail on their merits. Maryland courts routinely look to the Title VII context to determine the scope of liability under section 20-1202 (former Article 49B). *See, e.g.*, *State Comm'n on Human Relations v. Kaydon Ring & Seal, Inc.*, 149 Md.App. 666, 695-96 (2003) (applying federal Title VII standards in Article 49B discriminatory termination case); *Chappel v. S. Maryland Hosp., Inc.*, 320 Md. 483, 494 (1990) (reading state anti-retaliation provision "in harmony" with state provision). Although there may be some instances were section 20-1202 and Title VII apply differently, none of those instances seem applicable here and neither party has suggested they apply. Likewise, section 2-222 of the Prince George's County Code largely tracks the language of 42 U.S.C. § 2000e-2. Thus, at least in this case, all of these statutes – Title VII, section 20-1202, and section 2-222 – would reach the same acts and provide the same degree of liability. Because Bryan's Title VII claims fail, his state law claims do not succeed either.

## IV.  Conclusion

For the foregoing reasons, the County's motion, construed as a motion for summary judgment, will be granted.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge